**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CAMARION BEAL,                                   )
                                                 )
                      Plaintiff,                 )
                                                 )
        v.                                       )              No. 4:21-cv-00629-DDN
                                                 )
TONYA HARRY, et al.,                             )
                                                 )
                      Defendants.                )

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Camarion Beal for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice for failure to state a claim, and because it is time-barred by the applicable statute of limitations.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted a prison account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, after reviewing the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri. At the time relevant to the complaint, however, he was a pretrial detainee at the St. Louis City Justice Center.

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983. The complaint names Mayor Tonya Harry, Captain Steve Brock, Superintendent Adrian Barnes, Superintendent Jeffrey Carson, and Nurse L. Link as defendants. (Docket No. 1 at 2-4). The defendants are sued in both their official and individual capacities. Attached to the complaint are two exhibits, including a

handwritten informal resolution request and a copy of the "Nursing Encounter Tool" corresponding to the treatment provided by Nurse Link.[1]

In the "Statement of Claim," plaintiff alleges that defendants failed to protect him from an assault by a correctional officer and were deliberately indifferent to his medical needs. He asserts that on January 10, 2016, while an inmate at the St. Louis City Justice Center, he sustained a beating by Correctional Officer Dallas Jones. (Docket No. 1 at 5). Specifically, plaintiff alleges that Officer Jones hit him with a "department issued walkie talkie." As a result of this incident, he states that he "suffered head trauma and a bruised lip and eye [irritation]."

With regard to Superintendent Barnes, plaintiff states that Barnes "failed to keep [him] safe from Dallas Jones" despite "knowing [that] Dallas Jones assaulted [him] on July 11, 2012." Plaintiff does not explain how Barnes knew about the 2012 assault, other than to note that it "was documented by Lt. Karla Harrison when [he] was an [arrestee] in the same facility." He further alleges that instead of Barnes "launching an administrative investigation…they covered up" both incidents.

Likewise, plaintiff accuses Superintendent Carson of failing to keep him safe from harm. He also asserts that Carson failed to provide medical staff with "an accurate account of the use of force that was deployed on [him]" on January 10, 2016. In particular, plaintiff states that Carson "failed to provide medical with any information concerning the head trauma plaintiff sustained when he was well aware of it." (Docket No. 1 at 6).

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

As to Nurse Link, plaintiff alleges that Link "failed to treat, screen, or administer aid to plaintiff concerning" his purported "head trauma" from the "use of force" on January 10, 2016. According to plaintiff, Nurse Link rinsed pepper spray out of his eyes and documented the "knots in his head," but did not render him "aid for the head trauma he sustained." Specifically, plaintiff contends that Nurse Link should have declared an "emergent or urgent intervention." He notes that he "passed out an hour after" Nurse Link's "initial assessment," and that Nurse Link did not properly "screen [his] head injury" or "notify the practitioner of these serious injuries." (Docket No. 1 at 6-7).

In reference to Mayor Harry and Captain Brock, plaintiff states that both Harry and Brock initially justified Officer Jones's use of force because he only deployed pepper spray, even though they were "aware of [plaintiff] sustaining a [beating]." (Docket No. 1 at 8). He asserts that they should have opened an administrative investigation "after they learned of the disturbing news." Plaintiff concludes that Mayor Harry and Captain Brock "clearly put roadblocks up to information" and "[covered] up the cause of [his] injuries."

As a result of Officer Jones's alleged excessive force, plaintiff suffered knots on his head – which he terms "head trauma" – a "busted lip," and a "bruised hip." (Docket No. 1 at 8). He contends that he required a CT Scan and MRI but did not receive one. Plaintiff seeks $250,000,000 for the mental, psychological, and emotional trauma he endured, and which he claims "is still affecting [him] years later." (Docket No. 1 at 9).

**Prior Lawsuit**

The Court notes that on December 11, 2017, plaintiff filed a lawsuit against Dallas Jones and Jeffrey Carson regarding the same alleged assault that occurred on January 10, 2016. *Beal v.*

*Jones*, No. 4:17-cv-2862-DDN (E.D. Mo.). More specifically, plaintiff sued Officer Jones for excessive force, and Superintendent Carson for failure to protect.

Following initial review, the official capacity claims against both defendants were dismissed without prejudice. However, process was issued as to Jones and Carson in their individual capacities. On August 3, 2018, plaintiff filed an amended complaint, in which he added the City of St. Louis Department of Public Safety, and Nurse Link of Corizon Health, as defendants.

Defendants Jones and Carson filed a motion to dismiss. On September 24, 2018, the Court dismissed plaintiff's claims against defendant Carson, the Department of Public Safety, and Nurse Link. However, the claim against Officer Jones was allowed to proceed.

Ultimately, plaintiff was appointed counsel. On September 17, 2020, the Court denied Jones's motion for summary judgment. The case went to jury trial on June 15, 2021. On June 16, 2021, the jury found in favor of Officer Jones, and the action was dismissed with prejudice.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging a failure to protect and deliberate indifference to his medical needs. Because plaintiff is proceeding in forma pauperis, his case was reviewed under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice for failure to state a claim, and because it is time-barred.

### A. Official Capacity Claims

Plaintiff has sued defendants Harry, Brock, Barnes, Carson, and Link in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a

"suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, defendants Harry, Brock, Barnes, and Carson are alleged to be employees of the City of St. Louis. As such, the official capacity claims against them are claims against St. Louis itself. Similarly, Nurse Link is asserted to be an employee of Corizon, meaning that the official capacity claim against her is a claim against Corizon, her employer. To state an official capacity claim against these individuals, plaintiff must demonstrate the liability of the entities that employ them. *See Kelly*, 813 F.3d at 1075.

### i.    City of St. Louis

As noted above, defendants Harry, Brock, Barnes, and Carson are alleged to be employees of the City of St. Louis. To state official capacity claims against them, plaintiff must state a claim against the city itself.

A local governing body such as the City of St. Louis can be sued under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must

establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

9

In this case, plaintiff's facts do not support the proposition that the City of St. Louis has an unconstitutional policy or custom, or that it has been deliberately indifferent in failing to train its employees.

First, plaintiff has not demonstrated the existence of an unconstitutional policy, because his facts do not point to any "policy statement, ordinance, regulation, or" official decision as being at issue in this case. Certainly, he has not shown that his constitutional rights were violated because of "a deliberate choice of a guiding principle or procedure made by the [City of St. Louis] official who has final authority regarding such matters." Instead, plaintiff's facts describe a single instance of excessive force in 2016 that he believes amounts to a failure to protect and deliberate indifference to his medical needs. A court, however, cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, plaintiff has not established an unconstitutional custom, as he has not alleged the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that officials from the City of St. Louis were deliberately indifferent to or tacitly authorized such misconduct. Rather than a pattern, plaintiff has presented facts regarding one incident. As noted above, however, a custom cannot be inferred from a single occurrence.

Finally, plaintiff has not adequately alleged that the City of St. Louis was deliberately indifferent in training or supervising its employees. Deliberate indifference requires notice to the city that its "procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is ordinarily demonstrated by alleging a "pattern of similar constitutional violations by untrained employees." However, as previously discussed, plaintiff's facts, such as they are, focus on a solitary 2016 incident, and are insufficient to demonstrate a pattern.

For all these reasons, plaintiff has failed to state a claim against the City of St. Louis. Therefore, the official capacity claims against defendants Harry, Brock, Barnes, and Carson must be dismissed.

**ii.    Corizon**

Plaintiff has asserted an official capacity claim against Nurse Link, who is alleged to be employed by Corizon. As previously noted, the official capacity claim against her is actually treated as being made against Corizon itself.

A corporation that is acting under color of state law, such as Corizon, cannot be liable on a respondeat superior theory. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a 42 U.S.C. § 1983 claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

In this case, there is no indication that Nurse Link acted according to a written Corizon policy. There is likewise no support for the proposition that there was a pattern of unconstitutional misconduct, such as is necessary to demonstrate the existence of a custom. Finally, plaintiff does not point to any official action taken by Corizon in this matter. Indeed, Corizon itself is not

mentioned whatsoever in the "Statement of Claim." To the extent that plaintiff seeks to hold Corizon liable for the actions of its employee, respondeat superior is not available.

For these reasons, plaintiff has not established Corizon's liability. Therefore, the official capacity claim against Nurse Link must be dismissed.

### B. Individual Capacity Claims

Aside from the official capacity claims, plaintiff has also sued defendants Harry, Brock, Barnes, Carson, and Link in their individual capacities. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

### i.   Defendant Barnes

Plaintiff accuses Superintendent Barnes of failing to protect him while he was an inmate at the St. Louis City Justice Center. Under the Due Process Clause of the Fourteenth Amendment, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). To demonstrate an unconstitutional failure to protect from harm, plaintiff must satisfy a two-pronged test. *Id*. That is,

12

he "must show (1) an objectively, sufficiently serious deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm… and (2) that the defendant was deliberately indifferent to the substantial risk of harm." *Id*. (internal citations omitted). With regard to deliberate indifference, "the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id*.

Here, plaintiff alleges that Superintendent Barnes "failed to keep [him] safe from Dallas Jones knowing that Dallas Jones assaulted [him] on July 11, 2012[,] which was documented by Lt. Karla Harrison when [he] was an [arrestee] in the same facility."

This conclusory allegation is insufficient to establish deliberate indifference. Specifically, with regard to the first prong, plaintiff's fleeting reference to an assault on July 11, 2012, does not – without more – show that "he was incarcerated under conditions posing a substantial risk of serious harm" on January 10, 2016. That is because three-and-a-half years elapsed between the two incidents, with no other facts establishing that a risk of harm was present at the time of the second assault. For example, plaintiff does not describe the context of the 2012 assault, which might support the contention that Officer Jones should have been kept separate from plaintiff. Plaintiff also fails to describe the context of the 2016 assault, which might have indicated that Officer Jones threatened him, or that Officer Jones had a retaliatory animus from the earlier incident, or that plaintiff had warned jail officials that he was in danger. None of these facts are present. Instead, plaintiff relies on his unsupported legal conclusion that Barnes failed to protect him. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (explaining that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

13

As to the second prong, plaintiff does not establish that Superintendent Barnes was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." While plaintiff concludes that Barnes knew of the 2012 assault – apparently because it was "documented by Lt. Karla Harrison" – there are no facts showing that Barnes was deliberately indifferent to a risk in 2016. For instance, plaintiff does not allege that Barnes knew plaintiff was being detained in close proximity to Officer Jones or that Barnes ignored any warnings. In point of fact, there is no indication that Superintendent Barnes even knew plaintiff was incarcerated in the first place, prior to his assault on January 10, 2016.

Plaintiff appears to rely on Superintendent Barnes's position of authority in asserting liability. However, this is not sufficient to show the personal responsibility necessary to state a 42 U.S.C. § 1983 claim. Rather, plaintiff must show that a "supervising official, through his own individual actions, violated the Constitution." *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020). Plaintiff has not done this.

Beyond the issues discussed above, the Court notes that plaintiff's claim against Superintendent Barnes relies wholly on legal conclusions and the recitation of a cause of action. That is to say, plaintiff concludes that Barnes failed to protect him, but neglects to provide any factual enhancement that actually supports the proposition. This type of pleading is insufficient to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

For all these reasons, plaintiff has failed to state a claim against Superintendent Barnes. Therefore, the individual capacity claim against Barnes must be dismissed.

14

ii.      **Defendant Carson**

Plaintiff alleges that Superintendent Carson failed to protect him from harm, and also failed "to provide information to medical staff concerning an accurate account of the use of force." In particular, plaintiff states that Carson was "well aware" of plaintiff's "head trauma," but did not provide that information to "medical."

As with Superintendent Barnes, plaintiff appears to rest the imposition of liability on Superintendent Carson's position of authority. However, a general responsibility for supervising the operations of a jail is insufficient – on its own – to establish the personal involvement required to support 42 U.S.C. § 1983 liability. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (explaining that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). *See also Morris*, 954 F.3d at 1060 (explaining that plaintiff must show that "supervising official, through his own individual actions, violated the Constitution").

In this case, plaintiff broadly states that Superintendent Carson was "aware" of the use of force deployed against him because of "several eyewitness statements and plaintiff['s] statement." Even assuming Carson was "aware," plaintiff does not allege that Carson was required to personally make a report to the medical staff following a use of force incident. Put another way, plaintiff does not indicate whether Carson – in his position as "superintendent" – actually worked onsite at the St. Louis City Justice Center, whether he personally supervised the employees there, or whether it was part of his job duties to relay information to medical staff. Indeed, plaintiff does not even indicate *when* Superintendent Carson learned of the event, thus giving him the ability to timely relay information to the medical staff. Rather than provide these facts, plaintiff is clearly

15

attempting to hold Carson responsible simply on the basis of his supervisory position. That is not sufficient to state a claim. *See Morris*, 954 F.3d at 1060; and *Camberos*, 73 F.3d at 176.

To the extent that plaintiff mentions Superintendent Carson's own actions, he has not demonstrated a causal link to the violation of his constitutional rights. Namely, plaintiff has not shown that Carson's purported failure to provide medical staff with "an accurate account of the use of force that was deployed on [him]" actually constituted deliberate indifference to his medical needs and caused him harm. To the contrary, there is no indication that Carson was a medical professional, or that it was necessary for him to provide this information for plaintiff to be properly treated. That is, plaintiff does not show that this same information could not have been ascertained by the medical staff during its assessment, or given to medical staff by plaintiff himself.

For all these reasons, plaintiff has not stated a claim against Superintendent Carson. Therefore, the individual capacity claim against Carson must be dismissed.

### iii.   Defendants Harry and Brock

Plaintiff alleges that Mayor Harry and Captain Brock failed to protect him, and also failed to thoroughly investigate the January 10, 2016 use of force, resulting in a coverup.

With regard to the failure to protect claim, "[a] jail official violates the Due Process Clause…when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013). Deliberate indifference requires a detainee to make two showings. *Id*. First, objectively, the detainee must demonstrate that he faced a serious risk of harm. *Id*. Second, he must subjectively establish that the jail "official knew of and disregarded the risk to the inmate's safety." *Id*.

Here, plaintiff has not made a showing with regard to either prong of deliberate indifference. First, as discussed above, plaintiff has not demonstrated that he faced a serious risk

of harm. His only allegation to this end – regarding a 2012 assault by Officer Jones – fails to support the contention that Officer Jones posed a risk to plaintiff in 2016. Second, and more pertinently in the case of Mayor Harry and Captain Brock, plaintiff has not provided facts establishing that Harry and Brock knew of and disregarded a risk to plaintiff's safety. To the contrary, plaintiff's allegations against Harry and Brock concern actions taken *after* plaintiff was purportedly assaulted by Officer Jones. There is no indication that either Harry or Brock knew of any risk of harm to plaintiff *before* he was assaulted but failed to take corrective action. To the extent that plaintiff believes Harry and Brock to be liable based on their positions of authority, the Court once again notes that "officials are personally liable only for their own misconduct." *See Krigbaum*, 808 F.3d at 340.

As to plaintiff's claim that Mayor Harry and Captain Brock failed to open an investigation into Officer Jones's use of force, plaintiff has not demonstrated a due process violation. The determination of whether an inmate was denied due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that plaintiff has been deprived of a protected interest, the process necessary to protect that interest must be determined. *See Williams*, 662 F.3d at 1000.

In this case, plaintiff has not demonstrated that Mayor Harry or Captain Brock deprived him of life, liberty, or property. He faults them for not questioning Officer Jones or opening an "administrative investigation," but has not shown that he was constitutionally entitled to such an investigation, or that Harry's and Brock's failure hurt him in any way. For example, plaintiff does not allege that the lack of an investigation into the January 10, 2016 incident put him at risk of harm in the future. Because plaintiff has not demonstrated that he was deprived of life, liberty, or property through governmental action, he has not stated a due process claim against either Harry or Brock.

The Court further notes that plaintiff has not stated a plausible claim for relief against either Mayor Harry or Captain Brock. The reason is that he does not delineate the specific actions that Harry and Brock either took or failed to take, thereby neglecting to show a causal connection between these defendants and a violation of his constitutional rights. Instead, plaintiff relies on broad and conclusory allegations lacking sufficient factual underpinnings. The Court is not required to accept plaintiff's conclusions as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

For all these reasons, plaintiff has failed to state a claim against Mayor Harry and Captain Brock. Therefore, the individual capacity claims against Harry and Brock must be dismissed.

### iv.    Defendant Link

Plaintiff alleges that Nurse Link was deliberately indifferent to his medical needs. Since plaintiff was at all relevant times a pretrial detainee, his constitutional claims fall within the protections of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). Nonetheless, the Fourteenth Amendment provides at least as much protection to pretrial detainees

as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris*, 954 F.3d at 1058 (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a government official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that government officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*

*v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

According to plaintiff, Nurse Link exhibited deliberate indifference by failing to "treat, screen, or administer aid" to him. To support this contention, he alleges that she did not render aid for his "head trauma," but instead rinsed the pepper spray from his eyes and documented the "knots" on his head. Plaintiff insists that Nurse Link should have declared an "emergent or urgent intervention" and to contact a "practitioner for continuity of care."

These facts do not demonstrate that Nurse Link's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." To the contrary, plaintiff's own facts and exhibits indicate that plaintiff was seen by Nurse Link on the same day as the alleged assault by Officer Jones. At that time, Nurse Link assessed plaintiff, took his vital signs, and washed out his eyes. She also noted that plaintiff had "knots" on his head. Clearly, then, there was no denial or even a delay in plaintiff being seen for medical treatment.

Plaintiff essentially argues that Nurse Link did not do enough. More precisely, he believes that an emergency situation should have been declared for his "head trauma," and that he should have received a CT scan and MRI. Plaintiff, however, provides no facts demonstrating that such interventions were obviously necessary and warranted at the time that Nurse Link assessed him. Indeed, he does not allege any injury from the failure to provide a CT scan or MRI, such as the later determination that he suffered a concussion or skull fracture. Thus, plaintiff has not shown that Nurse Link's actions evinced "a highly culpable state of mind approaching actual intent," which is required to show deliberate indifference.

Rather than deliberate indifference, plaintiff's allegations against Nurse Link constitute a disagreement over treatment decisions. Nurse Link evidently did not feel that plaintiff's "head trauma" compelled the declaration of an emergency or other immediate action. Plaintiff disagrees with this medical assessment. Regardless of whether plaintiff believes Nurse Link's actions were reasonable or not, his dispute over the proper course of his treatment does not rise to the level of a constitutional violation. *See Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions…does not rise to the level of a constitutional violation"). Even to the extent that Nurse Link's medical judgment was incorrect – which plaintiff has not shown – such an error would amount to malpractice, which is also not sufficient to state a constitutional violation under 42 U.S.C. § 1983. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment); and *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983").

For the reasons discussed above, plaintiff has failed to state a claim against Nurse Link. Therefore, the claim against Nurse Link in her individual capacity must be dismissed.

**C.  Statute of Limitations**

Even if plaintiff had adequately stated a claim against defendants Harry, Brock, Barnes, Carson, and Link, the case would still be subject to dismissal as time-barred. While there is no statute of limitations contained within 42 U.S.C. § 1983, the Supreme Court "has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). Thus, for cases arising in Missouri, the five-year statute of limitations for personal injury actions found

in RSMo § 516.120(4) applies to § 1983 actions. *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005).

In Missouri, the statute of limitations for personal injury actions begins when the damage is capable of becoming known, not when the injury is actually discovered. *See Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. 2006); and *Chem. Workers Basic Union, Local No. 1744 v. Arnold Sav. Bank*, 411 S.W.2d 159, 163-64 (Mo. 1966). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

In this case, plaintiff repeatedly asserts that he sustained a beating amounting to excessive force on January 10, 2016, which resulted from a failure to protect on the part of defendants Harry, Brock, Barnes, and Carson. He also states that Nurse Link was deliberately indifferent to his medical needs, when she failed to properly treat him following this assault. Based on his own allegations, plaintiff's damages were capable of being known on that date. As such, plaintiff had five years from January 10, 2016 to file his 42 U.S.C. § 1983 action. That deadline expired on January 11, 2021. The instant action was not filed until May 25, 2021, over four months after the expiration of the five-year statute of limitations. Therefore, even assuming that plaintiff had adequately stated claims against the named defendants, this case must be dismissed as time-barred.

## D.  Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and because it is time-barred. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 18th day of November, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE